Smith *v.* Camp, survivor.

</div>

|     |     |
| --- | --- |
| 84  | 117 |
| 107 | 283 |
| 84  | 117 |
| 116 | 336 |
| 84  | 117 |
| 128 | 129 |

1. A mortgage on personalty is valid between the parties, irrespective of any defects in the attestation or probate, its execution and delivery being duly proved at the trial.
2. Variance of the levy from the mortgage in describing the property will not render the levy illegal, where both descriptions are fairly applicable to the property.
3. The evidence as to the payment or non-payment of the debt in controversy being conflicting, the verdict settles the question.
4. To confirm other testimony that certain payments were in fact applied to an account between the parties, the account itself with the credits entered therein is competent evidence.
5. Two verdicts rendered by the same jury in the same case appearing, one of them incorrect, the other correct, the presumption is that the latter was substituted by the jury for the former.
6. That the verdict in a justice's court was written and signed upon another paper, when it ought to have been upon the affidavit of illegality, is a mere irregularity and will not vitiate the trial.
7. A defendant in *fi. fa.* who has recited a levy, both in his affidavit of illegality and the bond given for the forthcoming of the property, will not be heard to controvert the fact of such levy at the trial of the affidavit of illegality.
8. That pending the case made by the affidavit, the execution was withdrawn and levied upon other property, will not render the former levy illegal.

Simmons, J., not presiding, because of sickness.

December 13, 1889.

Mortgages. Probate. Evidence. Levy. Verdict. Accounts. Payment. Presumptions. Practice. Estoppel. Before Judge Milner. Gordon superior court. February term, 1889.

John M. Smith gave to Camp & Reynolds a mortgage

to secure two promissory notes, one dated May 28, 1887, and due November 1, 1887, for $75, with interest from date; the other of the same date, due November 10, 1887, for $50, with interest from date at the same rate, and both including 10 per cent. attorneys' fees in case of suit. The mortgage was upon the following property : "My entire crop of corn and cotton consisting of twelve acres, more or less, now growing and in cultivation (describing the land); also one four-horse dray, thimble skein, and known as the Anderson Duggar dray, and one speckled yoke of oxen, both named Dave, about eight years old, each now in my possession." It purports to have been signed by John M. Smith on May 28, 1887, and attested by "T. Bobo, B. H. Dodd." On June 3, 1887, B. H. Dodd made affidavit before a magistrate of the county in which the mortgage was given and in which the parties to it resided, that he signed the mortgage as a witness, and saw John M. Smith sign it. On the same day, it was filed in the office of the clerk of the superior court of said county and recorded. On April 28, 1888, Camp, as surviving partner of Camp & Reynolds, made affidavit before the same magistrate, one Scott, that Smith was indebted to him as survivor on said mortgage $42.65 principal, $3.12 interest, and $4 interest to date, and $4.57 attorneys' fees. The magistrate thereupon issued a *fi. fa.* returnable to his court to be held on the fourth Saturday in May, 1888, and directed "to all and singular the constables of said State." It has upon it the following entries : 1st, levy "upon one yoke of oxen, red speckled sided, about nine years old, as the property of J. M. Smith, defendant, this April 28, 1888. H. S. Taylor, L. C." 2d. "I have this day levied on one dray known as the property of John M. Smith, to satisfy this *fi fa*. This July 18, 1888. John Y. Lynch, L. C." 3d. "Georgia, Floyd county. To all and singular the constables of said

county to execute and return.   This July 18, 1888.  Jeff
P. Earle, J. P." On May 26, 1888, Smith filed an affi-
davit of illegality upon the following grounds:

(1) The mortgage *fi. fa.* and the claim upon which it
was predicated have been fully paid off by him to plain-
tiff by the following payments: In 1887, to Camp, an
order on R. A. Reynolds, $2.50; 25 days going with
thresher, self and two yoke of oxen, $50; 443 pounds
lint-cotton, 10 cents per pound, $44.30; 343 pounds seed-
cotton, 3 cents per pound, $10.29; Condell note, $40.
In 1888, 2 sets switch ties, $36.74; 4½ days moving saw-
mill boiler and fixtures, with self and team, $13.50; one
half interest in 2,000 feet of lumber, $10.00.

(2) The mortgage has never been attested as required
by law, nor properly probated, there being no mortgage
from which a *fi. fa.* could issue.

(3) The property as described in the levy of Taylor,
L. C., dated April 28, 1888, was different in description
from those set out in the mortgage, and affiant has no
such oxen as described in said levy.

The case came on first for trial before Scott, and after
judgment by him, was appealed by Smith to a jury.   It
came on for trial before this jury at the July term, 1888,
of said county, Scott, J. P., presiding.   Smith then
traversed the entry of levy made by Taylor, upon the
ground that it was untrue, there never having been at
the time of said entry any seizure by Taylor of property
described in the levy.   Plaintiff introduced the mort-
gage and *fi. fa.*, to which Smith objected on the grounds
that the mortgage was not properly attested or pro-
bated; that the property as described in the levy of
Taylor was not the property described in the mortgage;
and because after the judgment had been rendered by
Scott, J. P., and after Smith had appealed to a jury, and
while the appeal was pending, the entries of levy signed
by Lynch, L. C., and the entry signed by Earle, J. P.,

had been made upon the *fi. fa.* without any order of court and without authority of law. These objections were overruled. Defendant offered to prove, and alleges he could have proved both by himself and by Taylor, that no levy or seizure of the property had ever been made by Taylor; but the court refused to allow him to do so, or to submit to the jury the traverse as a separate and distinct issue. Plaintiff introduced two accounts, each purporting to be account of Smith with Camp & Reynolds. The first runs in its charges from January 15, 1887, to June 18, 1887, footing up $125.10. On it were the following credits: September 14, by J. R. Reynolds, $2.50; September 26, by balance on going with thresher, $15.00; November 22, cotton and seed $43.60; same date, a charge to cash out of cotton, $4.00; without date, balance on ties, $16.25; by receipt, $5.00; by time wasted, $4.25; making a total of charges, $129.10, and of credits, $86.60, leaving due, $42.60. The second account has various charges running from July 4, 1887, to September 26, 1887, footing up $27.66; and two credits, one for $2.50, dated September 14, 1887, "by J. P. Reynolds, $2.50"; and one without date, "by going with thresher, $25.00." The account is then balanced; afterwards, entries made of various charges from December 8, 1887, to January 23, 1888, amounting to $21.15, with two credits, one a balance on cotton, $2.10, and the other "by switch ties, $19.05," thus extinguishing this account. Plaintiff also introduced the notes which the mortgage was given to secure. The $75 note had upon it a credit of $39.60 November 22, 1887, and the $50 note had upon it credits "by going with thresher, $15.00" September 26, 1887; "paid by Reynolds on this note, $2.50; by balance on this note, $16.25, 1–24–88"; and "credit by receipt on this note, $5.00." To the introduction of the accounts Smith objected, on the ground that they were no part of the suit and were irrelevant; but the objection was overruled.

Defendant testified that he gave the mortgage in advance of getting the goods; he did get the goods, but has paid off every cent on the mortgage. He owes Camp & Reynolds a small balance on account. After he paid off the mortgage, he told Camp he wanted it, and Camp told him he had left it in Rome as collateral, and when he went to Rome he would get it and give it to witness. Witness made the payments set forth in his plea, and told Camp to apply all the payments to the mortgage until it was paid off, and then the overplus to be credited on an account held against witness; but Camp applied the payments to the account. Never told Camp in the presence of Hampton or at any time that witness was willing to settle with him for going with the thresher on the basis of twenty days. Camp told witness he had given him credit with twenty days work with the thresher amounting to $40, but witness told him that he was out with the thresher twenty-five days, and Camp agreed to pay him $2.00 a day for self and team. One Brown testified corroborating defendant as to the time he was out with the thresher.

Camp testified that Smith still owed him $42.65 principal, besides interest, on the mortgage. After Smith signed the mortgage, he told Camp he wanted more goods. Camp hired him to go with the thresher, agreeing to pay him $2.00 per day. Smith said if he went with the thresher, he would have to have rations for his tenant while he was out threshing, which Camp "did." After the threshing was done, Camp settled with Smith in the presence of Hampton on the basis of twenty days, which settlement was satisfactory to Smith, giving Smith credit on his mortgage for the remainder that was due him after paying for the goods he bought while he was off threshing. Smith consented to the whole in the presence of Hampton. Camp did the same in reference to the switch ties; paid for the chop-

ping of the ties and fed Smith while he put them on ; consequently there was not much due Smith, but gave him credit for what it was. Smith was out with the thresher twenty-five days, but it was raining part of the time, and Smith stayed with Camp with the thresher during the rainy days. Smith hauled for Camp when the latter moved his machinery, but Camp gave him an order on Veal for $15.00, which was more than his work came to, and he owes Camp on that matter yet. Gave Smith credit for all he ever paid and just as Smith dictated at the time, and everything was all right with Smith until Camp began to want his money. One of the notes the mortgage was given to secure was fully paid off, and $42.00 were due on the other. One Hampton testified corroborating Camp as to the settlement with Smith about the threshing, and also that he heard Smith say he was satisfied with the settlement about the switch ties. B. H. Dodd testified, over objection of defendant, that he was one of the witnesses to the mortgage, saw the other witness sign, and also saw Smith sign it and deliver it to Camp.

The jury retired and brought in two verdicts, entered on the accounts. One was for plaintiff for $50.00, "which amount includes interest and attorneys' fees," and the other was for plaintiff for $39.50 principal, $6.45 interest, and $3.95 attorneys' fees. By *certiorari* to the superior court, the defendant made the following allegations of error : (1–3) Verdict contrary to law and evidence. (4) Admission of the mortgage in evidence. (5) Refusal of the magistrate to hear evidence upon the traverse or submit the same as a separate issue to the jury. (6) It was not shown on the trial that Taylor, L. C., made the levy dated April 28, 1888, nor that he had seized the property therein set out. (7) Admission of the mortgage and *fi. fa.* in evidence. (8) The jury found two verdicts, and entered them upon the accounts

and not upon the mortgage or *fi. fa.* (9) Admission of the accounts as evidence.

The *certiorari* was overruled and dismissed, and the defendant excepted.

O. N. STARR, for plaintiff in error.

W. J. CANTRELL & SON and T. C. MILNER, *contra*.

BLECKLEY, Chief Justice.

1. That the mortgage was not duly probated so as to prepare it for admission to record, was no objection to its validity as between the parties. It had two subscribing witnesses, and one of them proved, by his testimony given at the trial, the execution and delivery of the mortgage. Being thus proved, it matters not how defectively it was attested. *Gardner* v. *Moore*, 51 *Ga.* 268; *Nichols* v. *Hampton*, 46 *Ga.* 253; *Marable* v. *Mayer*, 78 *Ga.* 60.

2. The variance in the description of the property as set forth in the mortgage and the levy, was not a good ground of illegality to the *fi. fa.* The description in the mortgage was, "one speckled yoke of oxen, both named Dave, about eight years old." That given in the levy was, "one yoke of oxen, red speckled sided, about nine years old." Both of these descriptions could well be applied to the same oxen. They were about one year older when the levy was made than when the mortgage was executed, and though it does not state in the levy that both were named Dave, that omission is certainly not material.

3. The only remaining ground of illegality alleged in the affidavit is payment of the mortgage debt, and upon that the evidence was conflicting, and the jury settled the conflict by its finding. We do not see that they made any mistake.

4. It is complained that an account in favor of the mortgagees, against the mortgagor, was improperly ad-

mitted in evidence because irrelevant. It was, however, not irrelevant, for the reason that, according to the testimony on one side, certain payments were applied to the account and not to the mortgage. The account showed on its face that these payments, or some of them, were so applied. It was competent to show that the account in fact existed, and that payments had been made upon it, and were credited accordingly.

5. Two verdicts were rendered, one of them for a gross sum, including interest and attorney's fees; the other separating principal, interest and attorney's fees, and specifying the amount of each. The presumption is that the latter was a substitute for the former, as it is correct, whilst the former was incorrect. The magistrate's return does not explain how the irregularity occurred.

6. That the verdicts were written upon the account, and not upon the mortgage, we think makes no difference. The presumption is that the magistrate will take proper care to preserve the document, whatever it may be. It would have been better to order that the proper verdict should be transcribed upon the affidavit of illegality, but it seems this was not suggested. We think that was the paper upon which to write and sign the verdict, and not the mortgage.

7. The refusal to allow the sheriff's return of the levy to be traversed was correct. The defendant got or retained possession of the property by giving bond under §3976 of the code, and the bond recites the levy. Consequently, whether there was an actual seizure was not open to question. If there was no such seizure, there was no occasion for any bond. *Cohen* v. *Broughton*, 54 *Ga.* 296; *Scolly & Co.* v. *Butler*, 59 *Ga.* 849. The affidavit of illegality itself also alleges that the *fi. fa.* was proceeding illegally by levy. It could not be proceeding at all by levy unless the levy had been made.

8. It may have been irregular and improper to withdraw the *fi. fa.* pending the case made by the affidavit of illegality, carry it to another county, there have it "backed" and levied upon other property covered by it, but this did not render the *fi. fa.* illegal or vitiate the levy previously made upon the oxen. The levy upon the other property may have been illegal, but that question was not up for consideration. The affidavit on trial presented no such issue, nor could it, as it was made before this new matter arose or had any existence.

There was no error in overruling and dismissing the *certiorari.*                    *Judgment affirmed.*